MERCHANTS & CLERKS SAV. BANK CO. v. WILLIAM SCHIRK ET AL.

1. WARDS NOT PREJUDICED BY WRONGFUL TRANSACTION OF GUARDIAN, WHEN.
   The principle that where one of two innocent persons must suffer from the wrongful act of a third person, the one who put it in the power of such party to commit the wrong, must suffer the loss rather than the other

Lucas County.

innocent party, cannot be invoked to the prejudice of guardianship wards, in a matter in which their guardian was acting without warrant or authority of law.

2. SALE OF SECURITIES BY GUARDIAN WITHOUT AUTHORITY TO INNOCENT PURCHASER PASSES NO TITLE.

Where a foreign guardian is without authority to dispose of property belonging to his ward's estate, a sale of securities forming part of the estate to one who purchases in entire good faith, and without actual knowledge of such want of authority, passes no title to the purchaser, and such purchaser retaining such securities, will be liable as upon a conversion thereof. The question of good or bad faith is not involved in such case.

ERROR to Lucas common pleas court.

**Chittenden & Chittenden,** for plaintiff in error.

**O. B. Snider,** for defendant in error:

A guardian may sell the personal estate of his ward without an order of court. Laning R. L. 9821 (R. S. 6280); *Jelke* v. *Goldsmith,* 52 Ohio St. 499 [40 N. E. Rep. 167; 49 Am. St. Rep. 730].

The bank acquired a good title, and is not required to see to the application of the purchase money. *Jelke* v. *Goldsmith,* 52 Ohio St. 499 [40 N. E. Rep. 167; 49 Am. St. Rep. 730]; *Strong* v. *Strauss,* 40 Ohio St. 87.

A guardian, unless his powers in this respect are restricted by statute, is authorized, by virtue of his office, and without any order of court, to sell his ward's personal property and reinvest the proceeds, etc. *Maclay* v. *Equitable Life Assur. Soc.* 152 U. S. 499, 503 [14 Sup. Ct. Rep. 678; 38 L. Ed. 528]; *Lamar* v. *Micou,* 112 U. S. 452 [5 Sup. Ct. Rep. 221; 28 L. Ed. 751]; *Bank of Virginia* v. *Craig,* 33 Va. (6 Leigh) 399; *Wallace* v. *Holmes,* 9 Blatchf. 65 [29 Fed. Cas. 74]; Laning R. L. 9812 (R. S. 6271); *Field* v. *Schieffelin,* 7 Johns. Ch. 150 [11 Am. Dec. 441]; *Yerger* v. *Jones,* 57 U. S. (16 How.) 30 [14 L. Ed. 832]; *Elliott* v. *Merryman,* 1 Lead. Cas. Eq. 74, 110; *Bank of Muskingum* v. *Carpenter,* 7 Ohio (pt. 1) 21; *Giles* v. *Pratt,* 1 Hill (S. C.) 239 [26 Am. Dec. 170]; *Mulford* v. *Stalzenback,* 46 Ill. 303; *Woodward* v. *Donnally,* 27 Ala. 198; *Clyde* v. *Simpson,* 4 Ohio St. 445; *Coonrad* v. *Coonrad,* 6 Ohio 114; Story, Equity Sec. 1134 (Redfield ed. Sec. 977a); Perry, Trusts Secs. 225, 795, 797, 814; *Stall* v. *Cincinnati,* 16 Ohio St. 169; *Norman* v. *Towne,* 130 Mass. 52; *Goodwin* v. *Bank,* 48 Conn. 550; *Duncan* v. *Jaudon,* 82 U. S. (15 Wall.) 165 [21 L. Ed. 142]; *Foster* v. *Day,* 27 N. J. Eq. 599.

On the relation of attorney and client. Mechem, Agency Secs. 808, 809, 810, and 817; *Jenney* v. *Delesdernier,* 20 Me. 183; *Curtis* v. *Richards,* 40 Pac. Rep. 57 (Idaho); 3 Am. & Eng. Enc. Law (2 ed.) 347.

The exact justice called for by the situation in this case is very appropriately expressed in *Mulford* v. *Stalzenback,* 46 Ill. 303.

Bank v. Schirk.

## PARKER, J.

Electa R. Stagner, in 1894, was appointed guardian of the estates of her mionr sons, John David Stagner and Joseph William Stagner, the former aged nine and the latter seven years. She received. something like $2,000 on their account, as guardian, and $1,000 of that she loaned to one John Stagner, her father-in-law, who gave her therefor as guardian, his note, secured by mortgage on property in East Toledo—the mortgage running to Electa R. Stagner as guardian of John David and Joseph William Stagner, minors. In 1897, early in the year, Mrs. Stagner removed with her minor children, her wards, to Newton county, Missouri, and on March 12 of that year she made application to the probate court of that county under the laws of Missouri, for letters of guardianship there, and on March 19, 1897, her petition was granted and her bond given and she was duly appointed as guardian. Thereupon, in pursuance of the law, she appears to have advised the probate judge of this county of what she had done in that behalf and forwarded to him the proper evidence of her action. This should have resulted in all of her affairs as guardian being transferred to that court.

It appears, however, that the final account or statement of her affairs was not passed upon by the probate court of this county so as to formally release her sureties here until early in the year 1898. The reason for its dragging along in the court here for several months is not apparent; this matter does not appear to have been attended to as promptly as it might have been. In the meantime, along in November, 1897, Mr. M. B. Lemmon, an attorney at law who was then practicing at this bar and claiming to act for her as her attorney, sold the note and mortgage that I have mentioned to the Merchant's & Clerk's Savings Bank Company, it being a 6 per cent note, on which some interest had accrued, and it paid for it something over $1,100, figuring the discount in such a way that it would stand to it as 7 per cent paper. Mr. Lemmon did not account to the guardian for all the money received from this sale; he accounted for about $600 of it, and the remainder he wrongfully appropriated to his own uses and he has not made the loss good to her, and, because of that, her Missouri bondsmen instituted an action in this court to recover from the bank the amount that the attorney had wrongfully appropriated, claiming that it was a part of the estate of the heirs and that the bank had not acquired a good title to this note and that it was not justified in paying the money over to Mr. Lemmon.

The bank, on the other hand, claimed that it had bought this paper in entire good faith supposing that Lemmon was authorized as her at-

torney, and that she, as guardian was authorized to dispose of the property and that therefore it ought not to be required to make the loss good; that the loss, in fact, should fall upon her. The bank invokes the principle that where one of two innocent parties must suffer from the fault or default of a third person, that one who put it in the power of such person to defraud, should suffer the loss rather than the other of the innocent parties. I may remark in passing, however, that it should be remembered that the real parties are not Electa R. Stagner on the one part, who it is claimed put it in the power of Lemmon to defraud, and the Merchant's & Clerk's Savings Bank on the other; if it were a question between them, the principle invoked would be applicable, but the real parties here, upon the one side are these wards who have not by any act of theirs and could not put it in the power of Lemmon to defraud themselves and on the other side the bank; so the case must be settled upon a different principle. The issues were made up in the court below and the case tried—that is to say, evidence was introduced, and then the judge of the trial court directed a verdict in favor of the plaintiff, upon the ground or theory that the bank had not introduced any evidence tending to support its defense.

Now there is a good deal of oral testimony and written evidence that bears upon the question of whether Lemmon in fact represented this guardian whether he was even authorized by this guardian to represent her, and a good deal of sharp conflict along that line, and a good deal of evidence as to the transactions between Lemmon and the bank and the action taken by the bank, through its officers to acquaint itself with the situation and to inform itself, in such a manner as to protect itself (and, perhaps, not to do any wrong to anybody else), of inquiries made, investigations made, etc., and upon this it is claimed by the bank that the testimony shows that the bank exercised the best of faith, and because the evidence at least tends to establish that, it is insisted on behalf of the bank that the court should not have taken the case from the jury, but should have submitted the case to the jury. There is evidence tending to show that the bank exercised good faith, and, therefore it is for us to say whether it is a matter of any consequence—whether it is a question of good faith, whether the question of the bank having good faith should have been submitted to the jury, and whether if the jury found that the bank exercised entire good faith, that would have established a defense on the part of the bank.

In support of their contention that this would be and was a good defense, counsel for the bank have filed a brief, citing various authorities, and among them the case of *Jelke* v. *Goldsmith*, 52 Ohio St., 499

Bank v. Schirk.

[40 N. E. Rep. 167; 49 Am. St. Rep. 730], which holds, in substance, that one buying notes and mortgages from an administrator in good faith and without notice that the administrator contemplates any wrong to the estate, is to be protected.

On the other hand, counsel for the plaintiff below, the defendant in error, amongst other authorities cites the case of *Strong* v. *Strauss*, 40 Ohio St. 87, which is a case where a guardian made a sale of the real estate of a minor ward and took notes of the purchaser, for the deferred payments, payable to his order as guardian and secured by mortgage upon real estate, and it was held that when the purchaser found such notes bearing on their face the marks of a trust fund he is put upon his inquiry, and if he buys them from the guardian under circumstances fairly indicating that they were sold against the interest of his wards, he gets no title from the guardian who misappropriates the proceeds of the sale. In the course of the opinion by Judge Dickman, this is said, on page 94:

"Instead of an unmistakable trust fund to be regarded as sacred, the defendant treated the notes in the hands of the broker as ordinary commercial paper. We do not think the notes in question should have been so classed. Made payable as they were to the order of William Rankin, guardian of the minors respectively named in the body of the notes, they could not have the unrestricted circulation of commercial paper, or bills of exchange and promissory notes negotiable by the law merchant. Far from being treated as commercial paper, bought before maturity, in the usual course of trade, for a fair value, we consider it the better rule, to hold the defendant as charged with notice of the peculiarly trust character of the notes, and as bound to exercise that high decree of caution in purchasing the same, which the protection of such trust funds demands."

Counsel for the bank urges that even if that rule were applied here, they produced evidence at least tending to show that the bank officers exercised a high degree of care and caution and that herein their case differs from that of *Strong* v. *Strauss, supra;* that in that case it was found that the purchaser did not exercise care and caution in regard to the interest of the ward, whereas in the case at bar, it did so, and that the question of whether that was so' or not should have at least gone to the jury. And as a part of the evidence of the fact that the bank exercised good faith, it introduced in evidence a letter signed by Judge Millard, who was at that time the probate judge of this county, which

appears to have been written by him about the time the notes were bought by the bank, dated Nov. 22, 1897, and which reads:

"Toledo, O., November 22, 1897.
Toledo Merchants & Clerks Savings Bank, Toledo, O.
Gentlemen:

In the matter of the estate of the Stagner heirs, of which Mrs. Electa Stagner is guardian, I have to say that the guardian has removed from this state to Missouri, in Newton county, and that the proper papers have been transmitted to me from the probate court of Newton county; that Mrs. Electa Stagner has been appointed guardian of the children, John and Joseph, under the laws of Missouri.

Therefore the change of residence of the guardian necessitates the change of securities, and the transfer by the guardian, of the securities to your bank, is ratified.

Very truly,
I. I. MILLARD, Probate Judge.

Now that letter, it seems to us, handed to one making inquiry about this matter, was well calculated to mislead, although if it is fairly considered and if the inquiry which I have suggested is pursued, it carries the information that by her removal from the state of Ohio her power as guardian under the appointment made in this state have *ipso facto* ceased (Sec. 6272 Rev. Stat.) and that the whole matter of the management of the estate of these wards had been committed to the control of the courts of Missouri, and the declaration of the judge that he ratifies the sale that has been made, or is about to be made, is perfectly idle and worthless; for, notwithstanding the fact that he had not yet entered upon the journal the entry which operated as a discharge of the bondsmen of the guardian here, he was apprised of the fact by the filing of the papers from the probate court of Missouri, that that court had acquired jurisdiction over the subject-matter, and what he says in this letter, though not exactly in that form, amounts to a statement of that fact.

The court below seems to have regarded the effort and the evidence tending to prove that the bank exercised good faith in the matter, as immaterial. If the question of the good faith or the bad faith of the bank were to settle the rights of the parties here, or fix their rights, then, clearly, the action of the court below was wrong in taking the case from the jury; but we are of opinion after consideration of this matter that the action of the court in directing a verdict for the plaintiff was right, because it is not a question of good faith or of bad faith at all, that is,

Bank v. Schirk.

not necessarily so.  Under certain circumstances it might amount to
that; if the probate court of this county had allowed the guardian to
sell these securities without an order of the court while it still retained
jurisdiction over the subject-matter then the question of good faith or
bad faith might have been an important question in the case; but, upon
looking into the laws of Missouri, as we read them and understand them,
the guardian was without any authority whatever to sell these securities,
and therefore, of course, the guardian could not confer any authority
upon Lemmon, and an examination of this matter would have disclosed
the fact to the bank and it cannot supply this want of authority—this
entire absence of authority—by any exercise of good faith, no matter
how great.  I will call attention to certain of the provisions of the
laws of Missouri upon that subject.  Sections 3504 and 3496 Missouri
Rev. Stat. were read to us in argument, and I read Sec. 3504:

"The probate court shall order the proper education, support and
maintenance of minors, according to their means, and for such purposes
may from time to time, make the necessary appropriations of the money
or the personal estate or income of such minor not otherwise provided
to be used; and when the money, income or personal estate of such
minor shall be insufficient or not applicable to such objects, purpose or
purposes, the court may order the lease or sale of the real estate of such
minor, or so much thereof as may be requisite, or that said real estate
be mortgaged for not less than two-thirds its real value, to raise the
funds necessary to maintain, support and educate such minor."

That section contemplates the making of an appropriation by the
court for certain uses before the money is expended for such uses.
Then Sec. 3466:

"The guardian of the person, whether natural or legal, shall be
entitled to the charge, custody and control of the person of his ward,
and the care of his education, support and maintenance; the curator
shall have the care and management of the estate of the minor, subject
to the superintending control of the court; and the guardian of the per-
son and estate of the minor shall have all the powers and perform all
the duties both of the guardian of the person and a curator."

I should have read that section first, as that is the natural
order.  Then I read Secs. 3510 and 3511 Missouri Rev. Stat. which
seem to us to be more to the point and to be conclusive upon this ques-
tion of want of authority:

3510.  "When it shall appear that it would be for the benefit of
the ward that his real estate, or any part thereof, be sold or leased, or
his personal property, or any part thereof, be sold, and that the pro-

ceeds be put on interest or invested in United States or state bonds, or in any other real estate, or in any other personal property, or in the preservation of the estate of the minor, the probate court may authorize and order such sale, leasing or investment.''

3511. ''To obtain such order, the guardian or curator shall present to the court a petition setting forth the condition of the estate, and the facts and circumstances on which the petition is founded. If, after a full examination, on the oath of credible and disinterested witnesses, it appears to the court that it would be for the benefit of the ward that the personal estate, or any part of it, should be sold and reinvested or exchanged, the court may make an appropriate order for such sale and reinvestment or exchange, and thereupon the curator shall have the power to carry out such order in all its parts. And if, after such full examination, it appears to the court that it would be for the benefit of the ward that the real estate or any part of it should be sold or leased, the court may make an appropriate order for such sale or lease, under such regulations and conditions, subject to the provisions of this chapter in relation to the sale of the real estate of minors, as the court shall consider suited to the case, first requiring the guardian or curator to enter into good and sufficient bonds to make such leases and conduct such sales with fidelity to the interest of his ward, and faithfully to account for the proceeds of such sales and leases according to law, and as the order of the court may require, if the court shall be of the opinion that such bond is necessary.''

I have read the latter part of the section to show that in Missouri the same care and formality is required with respect to the sale and reinvestment of personal estate as is required in the sale of real estate. Under that statute it seems to us entirely clear that the guardian had no right and no power to sell this security in the absence of and order from the court, and, therefore, the guardian could not confer authority upon the attorney to do it and that the sale having been made without authority the bank required no title to the securities and was liable as upon a conversion thereof. The question of the good faith or bad faith of the bank is a matter of no importance in the case. The judgment of the court of common pleas will be affirmed.

**Hull** and **Haynes, JJ.,** concur.